441 So.2d 1146 (1983)
Erin Ruth ALBERTSON, Etc., et al., Appellants,
v.
RICHARDSON-MERRELL, INC., Etc., Appellee.
Chad BURTCHAELL, Etc., et al., Appellants,
v.
RICHARDSON-MERRELL, INC., Etc., Appellee.
Nos. 82-1951, 82-1952.
District Court of Appeal of Florida, Fourth District.
November 16, 1983.
Rehearing Denied December 23, 1983.
*1147 Arthur W. Tifford, Miami, and Cohen & Kokus, Miami, for appellants.
Leon H. Handley and Francis E. Pierce, III, Orlando, for appellee.
GLICKSTEIN, Judge.
This is an appeal from an order which dismissed an amended complaint with prejudice. We reverse and remand.
We are concerned at this juncture with only one defendant, John Shipley, who is the sole beneficiary of the trial court's order; however, in order to provide a true picture projected within the four corners of the pleading, we quote therefrom rather liberally.[1]
2. The Defendant, RICHARDSON-MERRELL, at its division known as Merrell National Laboratories, at all times material to this Amended Complaint, manufactured the pharmaceutical drug known as "BENDECTIN", outside of the State of Florida and promoted BENDECTIN and other drugs both outside and inside the State of Florida by a variety of means. The Defendant, MERRELL, also conducted and engaged in business within the State of Florida by maintaining and employing sales representatives, selling and delivering to pharmacies, drug stores, retail stores or other retail establishments located within the State of Florida its products, including BENDECTIN. It specifically conducted and engaged in business in such manner in Florida.
... .
3. The Plaintiff, ERIN RUTH ALBERTSON, (hereinafter referred to as the "Minor-Plaintiff"), is an infant and a citizen and resident of West Palm Beach, Florida.
... .
6. Defendant, JOHN SHIPLEY, is an employee of MERRELL who, at all times relevant hereto, promoted its drug, BENDECTIN, in Palm Beach County, Florida, including specifically the area or part thereof known as West Palm Beach, Florida, by acting as a representative/employee of MERRELL commonly known as a "detailman". In his capacity as a MERRELL "detailman", the Defendant, JOHN SHIPLEY, falsely made misrepresentations of a material nature to the physician(s) directly treating the Plaintiff, ROBIN ALBERTSON, after she conceived the Minor-Plaintiff, ERIN RUTH ALBERTSON, and, indirectly, the latter; alternatively the Defendant, JOHN SHIPLEY, failed to make material representations to the said physician(s) all as is more fully alleged hereinafter in paragraphs 9 and 10.
... .
7. Defendant, Merrell, began marketing the drug BENDECTIN sometime in 1957. The drug was and is marketed exclusively for the treatment of nausea and vomiting in pregnancy. Nausea and vomiting associated with pregnancy is usually self-limiting and is usually relieved by drinking very hot or cold liquids and Coca Cola and eating crackers.
8. Before marketing BENDECTIN in 1957, MERRELL conducted no tests to *1148 determine if the drug caused birth defects in test animals. It conducted the first animal tests with BENDECTIN in 1962 in Dutch Belted white rabbits. The tests were performed by Robert Staples, one of MERRELL's employees, who observed test results which suggested that BENDECTIN caused a dose-related increase in the number of deformities observed in the off-spring of the test animals.
9. MERRELL concealed Staples' findings from the medical community and the Federal Food and Drug Administration (hereinafter referred to as the "FDA"). Instead, it submitted a rewritten version of the Staples study which omitted Staples' conclusions and misstated the nature of the deformities he observed. MERRELL also caused the rewritten Staples study to be published in the medical literature in a calculated attempt to promote an unfounded belief in BENDECTIN'S safety in the medical community while minimizing the true risks associated with the use of the drug.
10. Defendant, MERRELL, engaged in a pattern and practice of promoting BENDECTIN as safe for ingestion by women in early pregnancy while concealing the fact that spontaneous adverse reaction reports in its files contained a remarkable and disproportionately high percentage of limb defects when compared to other drugs taken by pregnant women. In furtherance of MERRELL's scheme of concealment it misled inquiring physicians by falsely stating or implying that there had been no prior reports of birth defects associated with the use of BENDECTIN. The Defendant, JOHN SHIPLEY, promoted the drug BENDECTIN to the physician(s) treating the Plaintiffs, as aforesaid, by falsely misrepresenting material facts concerning the safety of BENDECTIN by stating that BENDECTIN was "absolutely safe" or words to that effect, well knowing that the safety vel non of BENDECTIN was not as he represented or, in the alternative, while he did not know the truth vel non of the safety of BENDECTIN. In addition the Defendant, JOHN SHIPLEY, failed or refused, as the case may be, to represent to the physician(s) treating the Plaintiffs, as aforesaid, the true status as to the absence of the safety of BENDECTIN on developing embryos, including the Minor-Plaintiff, ERIN RUTH ALBERTSON.
11. On June 6, 1977, Plaintiff, ROBIN ALBERTSON, consulted her physician who had been fraudulently misled by MERRELL and the Defendant, JOHN SHIPLEY, into believing that BENDECTIN was safe for use in early pregnancy. The physician prescribed BENDECTIN for ROBIN ALBERTSON for the treatment of nausea in the early stages of her pregnancy.
12. Plaintiff, ROBIN ALBERTSON, ingested BENDECTIN throughout the most of the first trimester of her pregnancy.
13. On January 29, 1978, Plaintiff, ROBIN ALBERTSON, gave birth to Plaintiff, ERIN RUTH ALBERTSON, who had severe birth defects.
... .
15. Defendant, MERRELL, developed, marketed and promoted BENDECTIN in the United States and the State of Florida exclusively for the treatment of "morning sickness" in pregnancy.
16. MERRELL, promoted and marketed BENDECTIN, materially and falsely misrepresenting that it was safe for use by women in early pregnancy and marketed BENDECTIN for use by such women although it knew, or in the exercise of reasonable diligence should have known, that BENDECTIN was teratogenic, that it caused birth defects, or, in the alternative, MERRELL had insufficient knowledge to represent to the medical community that BENDECTIN was safe for use by pregnant women during the first trimester of pregnancy. The Defendant, JOHN SHIPLEY, acted in concert with and aided and abetted MERRELL in the promotion of BENDECTIN by affirmatively falsely misrepresenting in material part the safety of BENDECTIN *1149 or failing to represent its true vel non status as unsafe for early developing embryos, as is more fully alleged in paragraphs 9 and 10.
17. By marketing BENDECTIN solely for the indication of treating nausea and vomiting in pregnant women, MERRELL knew, or in the exercise of reasonable diligence should have known, that BENDECTIN would be routinely prescribed during the first trimester of pregnancy, a period when an embryo can be severly [sic] deformed by exposure to a teratogenic chemical, that is a chemical capable of causing birth defects.
18. In order to foster and perpetuate the belief that BENDECTIN was safe for use in early pregnancy and while touting its purported but unfounded safety, MERRELL caused false and misleading articles and advertisements to be printed in the medical literature; lied to or otherwise deceived physicians asking MERRELL if there had been prior reports of birth defects associated with ingestion of BENDECTIN and otherwise sought to minimize any risks associated with BENDECTIN's consumption.
19. Defendants, MERRELL and JOHN SHIPLEY, maliciously made misrepresentations and concealed material results concerning the animal and human experience of BENDECTIN from the medical community and the Plaintiffs' treating physician.
20. Plaintiff, ROBIN ALBERTSON, or her physician, or other medical personnel acting as her agents, relied on MERRELL's and Defendant, JOHN SHIPLEY,'s [sic] misrepresentations and the absence of information in the medical literature, which had been concealed by MERRELL that BENDECTIN caused birth defects.
21. The foregoing reliance was justified.
22. As a direct and proximate result of the culpable concealments and misrepresentations of MERRELL and Defendant, JOHN SHIPLEY, Plaintiff, ROBIN ALBERTSON ingested BENDECTIN which caused her child to be deformed.
While medical science toils in overcoming the tragedies visited by disease, all of society faces each day the interfacial illnesses of complacency and deception. We intend to address both by this opinion. In doing so, we are able to look again to the expressed wisdom of one of America's greatest jurists, Cardozo, who wrote while still sitting on New York's highest court:
A representation, even though knowingly false, does not constitute ground for an action of deceit unless made with the intent to be communicated to the persons or class of persons who act upon it to their prejudice. Ultramares Corp. v. Touche, Niven & Co., 255 N.Y. 170, 187, 174 N.E. 441, 447 (1931).
This case fits precisely within the circle of protection described by the foregoing principle. A drug manufacturer's detail man makes representations to a physician caring for a pregnant woman. It is obvious that the embryo must be protected in such circumstance; and it is, quite frankly, hard to consider seriously the arguments of the party against whom the allegations have been made. But for the complacency from which we all suffer, cynical might well be an apt description of the defendant's legal position in suggesting immunity from judgment, given the assumption of truth to the allegations on motion to dismiss.
We have found no precedent or principle announced by Florida jurists in these factual circumstances which would conflict with our conclusion. We have held:
For fraud to be actionable, the following elements must be made to appear:
(1) a misrepresentation of material fact;
(2) [a] a knowledge of the representor of the misrepresentation, or
[b] representations made by the representor without knowledge as to either truth or falsity, or
[c] representations made under circumstances in which the representor ought to have known, if he did not know, of the falsity thereof;

*1150 (3) an intention that the representor induce another to act on it; and
(4) resulting injury to the party acting in justifiable reliance on the representation.
Alexander/Davis Properties, Inc. v. Graham, 397 So.2d 699, 706 (Fla. 4th DCA 1981), petition for review denied, 408 So.2d 1093 (Fla. 1981). The foregoing does not require that the ingesting mother be the one with whom the misrepresentor directly communicates. There are examples in this state's jurisprudence which support us. See Forbes v. Auerbach, 56 So.2d 895 (Fla. 1952), affirmed, 67 So.2d 685 (Fla. 1953), involving misrepresentation by one person of his financial condition to another, with the result that still another extend credit to the first person, and Strickland v. Muir, 198 So.2d 49 (Fla. 4th DCA 1967), in which there was misrepresentation of the first person's financial condition by a second person at the instance of the first person, with a resultant reliance by a third person. While these examples are financial cases and one American president said that the business of this country is business, Ebenezer Scrooge ultimately heeded his late partner's admonition that mankind should be his business.
It is eminently clear that Merrell's and its detail man's purpose in allegedly misinforming physicians about the safety of taking Bendectin was not to persuade physicians (unless they had morning sickness) to buy and ingest that preparation. Obviously they not only expected but desired these physicians to prescribe the drug for their pregnant patients to ingest. Any effect could hardly be said to stop with the mothers in light of the dependency of their embryos. While the universe of potential detrimental reliers may have been indefinite in number and the individuals making it up were not preidentifiable, nevertheless, the characteristics of the class were crystal clear. Appellant allegedly knew those characteristics and inferentially knew not only that such persons would rely but also that their dependent embryos would be affected as a result of such reliance.
One of the oldest cases holding there was a cause of action for fraud where a patient suffered harm because he used a prescription drug whose propensities the manufacturer knew but concealed from the medical profession is Wechsler v. Hoffman-La Roche, Inc., 198 Misc. 540, 99 N.Y.S.2d 588 (Sup.Ct. 1950), affirmed as modified, 108 N.Y.S.2d 990 (1951). There, the patient died of the effects of the drug. The supreme court of Bronx County cited Ultramares as authority for its ruling that "[r]eliance upon fraudulent representations by persons who are not the direct addresses thereof but who may be intended or expected to learn of and act upon such representations will found an action in fraud and deceit." Id. at 541, 99 N.Y.S.2d at 590. To defendant's claim that it would not be liable to the decedent because its representations were made to physicians and not to the decedent or persons of his class, the court replied that "one who misrepresents for his gain and benefit, at the expense of human life, should be answerable in fraud for all the reasonable and foreseeable consequences of his deception." Id. As to a more direct nexus between the fraudulent representation and the victim, the court declared that the physician who prescribed the drug was acting on his patient's behalf; therefore a fraud upon the physician was a fraud upon the patient. Id. The Wechsler court held that plaintiff also had a cause of action on a negligence theory.
A fraud theory also was asserted in Crocker v. Winthrop Laboratories, 514 S.W.2d 429 (Tex. 1974). There the detail man had assured the plaintiff's physician that the subject drug was not addictive when in fact the company did not know whether the drug was addictive or not. The Texas court held that this constituted a misrepresentation by the seller sufficient to subject the company to liability under Restatement (Second) of Torts § 402 B.[2]See *1151 also Bristol-Myers Co. v. Gonzales, 561 S.W.2d 801 (Tex. 1978).
Accordingly, we reverse and remand so that the plaintiffs can undertake their burden of proving the serious allegations made against the defendant.
HURLEY and WALDEN, JJ., concur.
NOTES
[1] This quotation is from the pleading in Albertson v. Richardson-Merrell, Inc., Case No. 82-1951. Except for plaintiffs' names, the amended complaint in Burtchaell v. Richardson-Merrell, Inc., Case No. 82-1952, is identical.
[2] That section provides:

402 B. Misrepresentation by Seller of Chattels to Consumer
One engaged in the business of selling chattels who, by advertising, labels, or otherwise, makes to the public a misrepresentation of a material fact concerning the character or quality of a chattel sold by him is subject to liability for physical harm to a consumer of the chattel caused by justifiable reliance upon the misrepresentation, even though
(a) it is not made fraudulently or negligently,
and
(b) the consumer has not bought the chattel from or entered into any contractual relation with the seller.
Restatement (Second) of Torts § 402 B (1965).