**GLOBE COMMUNICATIONS CORP., Plaintiff,**

v.

**R.C.S. RIZZOLI PERIODICI, S.p.A., Defendant.**

**No. 87 CIV. 7390 (LBS).**

United States District Court, S.D. New York.

Jan. 29, 1990.

Milgrim Thomajan & Lee P.C. New York City (Andrew L. Deutsch and James J. Carroll, of counsel), Deutsch, Levy & Engel Chartered, Chicago, Ill. (Paul M. Levy, of counsel), for plaintiff.

Werbel McMillin & Carnelutti, New York City (Joseph D. Pope, of counsel), for defendant.

## OPINION

SAND, District Judge.

Defendant R.C.S. Rizzoli Periodici, S.p.A. ("Rizzoli") moves this Court pursuant to Fed.R.Civ.P. 12(b)(6) to dismiss the complaint for failure to state a claim. We deny Rizzoli's motion.

## Facts

Plaintiff Globe Communications Corp. ("Globe") publishes the weekly magazine *Globe*, which is sold throughout the United States and Canada. In May 1984, Rizzoli, a large international publisher based in Italy, published an article in its Italian language magazine *Novella 2000* entitled "CAT STEVENS: ENOUGH OF MUSIC, NOW I JUST WANT TO BE AN AYATOLLAH!" (translated from the original Italian) (the "Rizzoli Article"). The Rizzoli Article reported that the singer and entertainer Cat Stevens had converted to the Islamic religion and adopted the Islamic name Yusuf Islam, described his life in Teheran and dedication to Islamic religious principles, and suggested that the new convert was developing a close relationship with the Ayatollah Khomeini.

That month, a reporter for Globe, Len Stone, purchased a copy of the *Novella 2000* issue containing the Cat Stevens article. Globe then published in its June 19, 1984 edition of *Globe* (Volume 31, No. 25) an article entitled "Pop Superstar's Startling Conversion" ("Globe Article") which repeated the substance of the Rizzoli Article, attributing statements of European reporters as its source.

Mr. Islam sued Globe alleging that the Globe Article was false and defamatory and placed him in a false light. After Globe determined through discovery that many of the facts contained first in the Rizzoli Article and then in the Globe Article were false, it agreed to settle the suit brought by Mr. Islam. Globe now seeks to recover from Rizzoli the settlement costs and attorney fees it incurred in the defamation suit and punitive damages. Globe's complaint asserts three causes of action against Rizzoli for intentional misrepresentation, contribution and equitable subrogation.

## Choice of Law

A threshhold issue which must be resolved is whether the law of Florida, New York, or Italy controls in determining whether the complaint alleges viable causes of action. Choice of law questions are decided issue by issue. We therefore examine the choice of law issue as it relates to each of the three claims asserted.

Our jurisdiction is based on diversity of citizenship. This Court therefore applies the choice of law rule of New York, the forum state, in determining the applicable substantive law. *Klaxon Co. v. Stentor Electric Mfg. Co.*, 313 U.S. 487, 61 S.Ct. 1020, 85 L.Ed. 1477 (1941). New York courts choose the substantive tort law of the state that has the most significant relationship with the occurrence and with the parties. *Babcock v. Jackson*, 12 N.Y.2d 473, 482, 240 N.Y.S.2d 743, 752, 191 N.E.2d 279, 285 (1963). *But see Lund's, Inc. v. Chemical Bank*, 870 F.2d 840, 845 (2d Cir. 1989) (lex loci delecti " 'remains the general rule in tort cases to be displaced only in extraordinary circumstances.' "), citing *Cousins v. Instrument Flyers, Inc.*, 44 N.Y.2d 698, 699, 405 N.Y.S.2d 441, 442, 376 N.E.2d 914, 915 (1978) (per curiam). Although New York has not adopted the *Restatement (Second) of Conflict of Laws* (1969), the *Restatement* advocates a similar approach to choice of law questions, *RCA Corp. v. Tucker*, 696 F.Supp. 845, 855 (E.D. N.Y.1988), and lists the relevant factors to be considered by courts. *See Restatement (Second) of Conflicts of Laws* §§ 6, 145(2), 148.

■ The first cause of action in the complaint alleges intentional misrepresentation. Rizzoli argues that either Italy or New York has the most significant relationship to the alleged tort; Globe urges this Court to apply Florida law. Not surprisingly, Rizzoli also argues that Italian law does not impose liability for the acts alleged in the complaint. Globe, on the other hand, submits an affidavit from its Italian law expert that reaches the opposite conclusion. We do not resolve this conflict concerning Italian law because New York's choice of law principles require the application of Florida law in this case.

It is unclear whether New York interest analysis requires a court to start its analysis by reference to the lex loci delecti rule. In fraud cases, moreover, since the harm suffered is intangible, our determination of

the place of harm necessarily involves evaluation of competing state interests. Therefore, our analysis starts with the lex loci delecti rule and then considers the state interests implicated.

In this case, the wrongful conduct took place in Italy where the *Novella 2000* article was first published. While the site of the injury was clearly in the United States where the article was read and relied upon, the parties disagree over where the more significant acts in reliance occurred. Rizzoli argues that since Len Stone, the *Globe* reporter purchased and read the article in New York, the reliance, and therefore the injury, occurred in New York. *See* Complaint ¶ 15; Affirmation of Joseph D. Pope ¶ 2. Globe, on the other hand, argues that reliance occurred in Florida since its employees and agents there authored and decided to publish the *Globe* article. *See* Complaint ¶ 16; Transcript of Oral Argument on November 17, 1988 at 11. In *Schultz v. Boy Scouts of America, Inc.,* 65 N.Y.2d 189, 491 N.Y.S.2d 90, 480 N.E.2d 679 (1985), the New York Court of Appeals held that "when the defendant's [wrongful] conduct occurs in one jurisdiction and the plaintiff's injuries are suffered in another, the place of the wrong is considered to be the place where the last event necessary to make the actor liable occurred." *Id.,* 65 N.Y.2d at 195, 491 N.Y.S.2d at 94, 480 N.E.2d at 683 (citations omitted). The tort of fraudulent misrepresentation requires a false statement, action by the plaintiff in reliance and resultant damages. Until an individual acts in reliance on a false statement and suffers damage, there can be no legal claim for fraudulent misrepresentation. Whether the last event necessary to the cause of action against Rizzoli is the decision by Globe to publish, the publication of the Globe article or the imposition of damages, all three occurred in Florida where Globe has its principle place of business and defended the lawsuit brought by Mr. Islam. Florida is the place where the great majority of the acts giving rise to liability took place.

Florida is also the state with the most significant interest in the tort alleged. The tort rule here is a conduct regulating rule,

and both Italy and Florida have an interest in regulating the conduct alleged. Rizzoli is an Italian organization, and Italy has an interest in providing clear standards of liability for publishers. *See Davis v. Costa–Gavras,* 580 F.Supp. 1082, 1092 (S.D.N.Y. 1984). Florida, on the other hand, has interests in both protecting its domiciliaries from fraudulent reporting and compensating those who incur damages. Since Globe maintains its principle place of business in Florida, Globe's economic loss is sited there. New York has no interest since no significant conduct occurred in New York. To some extent, every tort rule is designed both to provide clear standards of liability and to protect and compensate injured parties. In this case, Florida's concern with the conduct is greater and more direct than Italy's. The consequences of fraudulent reporting most directly impact on the recipient who acts in reliance. Since Globe is a Florida domiciliary, acted in reliance in Florida and incurred loss in Florida, Florida has the more significant relationship with the alleged tort, and this Court will apply Florida law.

■ Finally, Rizzoli argues that the application of Florida law would violate its constitutional right to due process. The Supreme Court held in *Allstate Ins. Co. v. Hague,* 449 U.S. 302, 101 S.Ct. 633, 66 L.Ed.2d 521 (1981), that "for a State's substantive law to be selected in a constitutionally permissible manner, the State must have a significant contact or significant aggregation of contacts, creating state interests, such that choice of its law is neither arbitrary nor fundamentally unfair." *Id.* at 312–13, 101 S.Ct. at 640. Florida has a significant relation to this litigation. Rizzoli's computerized subscription list indicates direct subscription sales to subscribers in 38 states and includes 60 subscribers residing in Florida. Rizzoli also has repeatedly contracted with an exclusive United States distributor for the sale of its periodicals throughout the United States. While the number of issues sold in Florida comprise only a small percentage of Rizzoli's total sales, Rizzoli has regularly sold issues of *Novella 2000* throughout the

United States and in Florida. *See Keeton v. Hustler Magazine, Inc.*, 465 U.S. 770, 104 S.Ct. 1473, 79 L.Ed.2d 790 (1984) (constitutional exercise of personal jurisdiction where less than 1% of magazine's subscription sold within jurisdiction). It is unreasonable for Rizzoli to claim unfair surprise at the application of Florida law.

The parties agree that Florida law applies to the claims for equitable subrogation and contribution. Such claims are governed by the laws of the state whose law also governs the underlying tort. *See Gregory v. Garrett Corp.*, 578 F.Supp. 871, 880–84 (S.D.N.Y.1983).

### Fraud Claim

■ The elements of an actionable fraud claim in Florida are:

> (1) A false statement concerning a material fact; (2) the representor's knowledge that the representation is false; (3) an intention that the representation induce another to act on it; and (4) consequent injury by the party acting in reliance on the representation.

*Johnson v. Davis*, 480 So.2d 625, 627 (Fla. 1985). The only disputed issue is whether the complaint alleges the requisite intent to defraud. Rizzoli argues that the complaint should be dismissed because it fails to allege (1) that Rizzoli intended that its Italian language article be communicated to Globe or other United States gossip magazines and (2) that Rizzoli published the *Novella 2000* article with the specific intention of inducing Globe to publish the *Globe* article.

Florida law does not require that the defendant directly communicate any fraudulent misrepresentation to the plaintiff. When the misrepresentation is made to a large indeterminate class, the defendant often will not know the specific recipients of its false communication. As long as the plaintiff is within the class of potential detrimental reliers, the defendant can be held liable. *See Albertson v. Richardson–Merrell, Inc.*, 441 So.2d 1146, 1150 (Fla. App.1983), *review denied*, 451 So.2d 850 (1984) (citing with approval *Wechsler v. Hoffman–La Roche, Inc.*, 198 Misc. 540, 99 N.Y.S.2d 588 (Sup.Ct.1950), *aff'd as mod-*ified, 279 A.D. 654, 108 N.Y.S.2d 990 (1951) ("Reliance upon fraudulent representations by persons who are not the direct addressees thereof but who may be intended or expected to learn of and act upon such representations will found an action in fraud and deceit.")). *Accord Restatement (Second) of Torts* § 531 (1977) (permits liability to class of persons).

This Court must also determine whether, under Florida law, reason to expect that the plaintiff will act upon the fraudulent misrepresentation satisfies the third element cited above. Actions for fraud under the common law originally required that the defendant have made the misrepresentation with the intent to cause the plaintiff to act in reliance on it. *See generally* Harper, James & Gray, The Law of Torts § 7.2 (1986). The scope of such tort actions has been gradually expanded, and the *Restatement (Second) of Torts* § 531 extends liability to those who the defendant has reason to expect will act in reliance on the statement, although such persons are beyond the range of his actual intent. "One has reason to expect a result if he has information from which a reasonable man would conclude that the result will follow or would govern his conduct upon the assumption that it will do so." *Restatement (Second) of Torts* § 531 comment d (1977).

The parties do not cite any Florida authority directly addressing this issue. However, as noted above, Florida law has expanded the scope its protection against fraud by permitting actions where the statements are addressed to a class of recipients. The Florida courts have also explicitly adopted other sections of the *Restatement (Second) of Torts* that define actions for fraud. *See Besett v. Basnett*, 389 So.2d 995, 997 (Fla.1980) (adopting *Restatement (Second) of Torts* §§ 540 & 541 as authority for defining justifiable reliance by plaintiffs); *Horan v. Horan*, 464 So.2d 224, 227 (Fla.App.1985) (citing *Restatement (Second) of Torts* § 525 for requirements of prima facie case of fraud). We therefore believe that Florida courts would recognize claims for fraud where the

defendant has reason to expect that the plaintiff will act in reliance upon the fraudulent misrepresentation.

■ Globe's complaint alleges that Rizzoli knew of the international press practice of reprinting the factual substance of newsworthy articles from other large-circulation magazines, Complaint ¶ 28, and that Rizzoli knew or reasonably should have foreseen that a natural and probable consequence of its publishing the Rizzoli Article was the republication by Globe and the defamation suit by Mr. Islam against Globe, Complaint ¶ 29-30. If these allegations are true, then Globe clearly falls within the class of detrimental reliers who can bring an action for fraud. Even if Rizzoli did not intend that Globe would rely on the article and incur damages, the complaint alleges that Rizzoli knew that some United States publication would probably republish the statements made in the *Rizzoli* article. These allegations satisfy the intent requirement under Florida law.

■ Finally, Rizzoli argues that Globe's claim for fraud merely attempts to restate a claim for libel and republication. Therefore, Rizzoli urges this Court to reject the fraud claim as an attempt to subvert the principles of libel law. We do not need to decide whether Florida republication law requires proof that Rizzoli actively controlled the republication. Republication liability addresses suits between the subject of the libel and the first publisher. Globe, the second publisher, sues Rizzoli here under a fraud theory. If Globe sustains its burden of proving fraud, Rizzoli should not escape the consequences of its fraud even if Mr. Islam could not directly assert a claim against Rizzoli for libel.

### Equitable Subrogation and Contribution

■ Globe also asserts claims for equitable subrogation and contribution against Rizzoli. Under Florida law, a claim for equitable subrogation is available whenever "one is required to pay a legal obligation which ought to have been met, either wholly or partially, by another." *Underwriters at Lloyds v. City of Lauder-*

*dale Lakes*, 382 So.2d 702 (Fla.1980); *see also West American Ins. Co. v. Yellow Cab Co.*, 495 So.2d 204, 207 (Fla.App.1986), *review denied*, 504 So.2d 769 (Fla.1987) ("The doctrine is based on the policy that no person should be unjustly enriched by another's loss, and may be invoked whenever justice demands its application, irrespective of technical rules"). Failure to comply with Florida's statutory notice requirement in libel suits will not defeat claims for equitable subrogation or contribution. *See Home Ins. Co. v. Advance Machine Co.*, 500 So.2d 664, 669 (Fla.App.1986). Globe's complaint alleges that Globe's injury was caused by either the joint or concurrent conduct of Rizzoli. Assuming, as we must at this stage of the proceedings that this allegation can be proven, we deny the motion to dismiss these claims.

### Conclusion

For the purposes of this motion, we accept as true the facts alleged in the complaint. While we deny Rizzoli's motion to dismiss the complaint, we express no opinion as to whether these claims could survive a motion for summary judgment. To support its claim for intentional misrepresentation, Globe must prove that Rizzoli had reason to expect that Globe would republish the substance of the Rizzoli Article. We hold merely that the complaint may survive a motion to dismiss.

Rizzoli's motion to dismiss the complaint is denied.

SO ORDERED.