Lawrence M. POWERS, Plaintiff,

v.

Moric OSTREICHER, Ostreicher Family Partnership, Norman Rabenstein, Allied Extruders, Inc., Eugen Gluck, Gluck Family Partnership, Armin Kaufman, Evan Litton and Arthur Cohen, Defendants.

No. 92 Civ. 8045 (RJW).

United States District Court,
S.D. New York.

May 28, 1993.

Henry P. Wasserstein, Skadden, Arps, Slate, Meagher & Flom, New York City, for plaintiff.

Daniel A. Pollack, Pollack & Kaminsky, New York City, for defendants Moric Ostreicher, Ostreicher Family Partnership, Norman Rabenstein, Allied Extruders, Inc., and Evan Litton.

Richard F. Ziegler, Cleary, Gottlieb, Steen & Hamilton, New York City, for defendants Eugen Gluck and Gluck Family Partnership.

Richard L. Derzaw, New York City, for defendant Arthur Cohen.

Allen I. Fagin, Proskauer Rose Goetz & Mendelsohn, New York City, for defendant Armin Kaufman.

## MEMORANDUM DECISION

ROBERT J. WARD, District Judge.

Defendants Moric Ostreicher, Ostreicher Family Partnership, Norman Rabenstein, Allied Extruders, Inc., Eugen Gluck, Gluck Family Partnership, Armin Kaufman, Evan Litton and Arthur Cohen ("defendants") have moved for an order, pursuant to Rule 12(b)(6) [1] and Rule 56, Fed.R.Civ.P., dismissing the complaint in the above-captioned action and granting summary judgment to defendants. For the reasons that follow, the motion is denied.

## BACKGROUND

In April 1986, defendants allegedly embarked on a scheme to fraudulently sell Favorite Plastics Corp. ("Favorite") at an artificially high price. This scheme was based on the general business principle that the price a potential buyer is willing to pay for a company is based on a multiple of that company's reported earnings. It is alleged that defendants fraudulently inflated Favorite's earnings, thereby ensuring that Favorite would sell at a higher price and increasing defendants' profits from the sale of Favorite.

In the spring of 1986, Lawrence M. Powers ("Powers" or "plaintiff"), then Chairman of the Board and Chief Executive Officer of Spartech Corporation ("Spartech") entered into negotiations for Spartech to purchase Favorite. For reasons not relevant to this decision, these negotiations eventually broke off.

In the spring and summer of 1987, negotiations for the purchase of Favorite by Spartech resumed. At a meeting in July, 1987, Powers provided defendants with a Spartech proxy statement, dated March 12, 1987 and a Spartech prospectus, dated April 22, 1987, which described Powers' role and control position in Spartech.

The prospectus indicated that, as a result of a voting agreement between a major stockholder, TCW Fund, and Powers ("the Voting Agreement"), plaintiff's approval [2] was necessary before Spartech could enter into any merger, acquisition, new business endeavor, new stock issuance or other like transaction.

In July 1987, defendants furnished Powers with unaudited financial statements for Favorite. These statements showed a marked increase in operating earnings from the previous year and were subsequently certified by Favorite's auditors, Laventhol and Horwath. Spartech's outside auditors reviewed and accepted the certified results. On November 3, 1987, Spartech purchased Favorite for $19,750,000.

The parties disagree as to whether Powers was acting solely in a corporate capacity, on behalf of Spartech, or in a corporate as well as an individual capacity during the negotiations for the purchase of Favorite. Furthermore, they disagree whether, assuming Powers was acting in a corporate as well as an

---

1. In their notice of motion, defendants indicate that they are moving pursuant to Rule 12(b), but do not specify which subsection of this rule is the basis for the motion. In response to a request from this Court, defendants have indicated that they are moving pursuant to Rule 12(b)(6). Letter from Daniel A. Pollack to the Honorable Robert J. Ward (May 17, 1993).

2. As discussed in Section C.2., *infra,* there is a dispute between the parties as to whether it was plaintiff's *personal* approval that was necessary or whether it was plaintiff's approval *in his role as a director of Spartech* that was necessary.

individual capacity, defendants were made aware of this fact.

Neither plaintiff nor Spartech became aware of the alleged scheme to artificially inflate Favorite's earnings until late 1990.

On July 2, 1991, Spartech commenced an action before this Court, *Spartech Corp. v. Ostreicher,* 91 Civ. 4526 (RJW) (the "Spartech Action"), against all of the defendants in the instant action except Evan Litton and Arthur Cohen, asserting RICO and fraud claims. Approximately two months later, Spartech's major investors removed plaintiff from his position as Chairman and Chief Executive Officer, giving as their primary reason the decline in the value of their investments in Spartech. Plaintiff's settlement agreement made in connection with the termination of his employment agreement with Spartech (the "Settlement Agreement") included a provision that plaintiff would supervise the Spartech Action. The Settlement Agreement also provided that plaintiff would receive for these services 40% of the net proceeds of the Spartech Action.

In July 1992, the Spartech Action was settled for $2 million. Of this amount, Powers received $529,370.28 as compensation for supervising the Spartech Action.

## DISCUSSION

A. *Standards for Granting Summary Judgment Pursuant to Rule 56* [3]

■ Summary judgment may be granted when the moving party establishes "that there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law." Fed.R.Civ.P.

56(c); *Rosen v. Thornburgh,* 928 F.2d 528, 532 (2d Cir.1991). If no rational fact-finder could find in the nonmovant's favor, there is no genuine issue of material fact and summary judgment is appropriate. *Anderson v. Liberty Lobby, Inc.,* 477 U.S. 242, 251–52, 106 S.Ct. 2505, 2511–12, 91 L.Ed.2d 202 (1986). In making this determination, the court should not resolve disputed issues of fact, but rather, while resolving ambiguities and drawing reasonable inferences against the moving party, must assess whether material factual issues remain for the trier of fact. *Western World Ins. Co. v. Stack Oil, Inc.,* 922 F.2d 118, 121 (2d Cir.1990) (quoting *Knight v. U.S. Fire Ins. Co.,* 804 F.2d 9, 11 (2d Cir.1986), *cert. denied,* 480 U.S. 932, 107 S.Ct. 1570, 94 L.Ed.2d 762 (1987)).

B. *Powers' Standing to Sue*

■ Defendants assert that Powers lacks standing to sue in his individual capacity because, during the course of the Favorite acquisition, he was acting solely as an officer and agent of Spartech and therefore no fraud was directed at him individually. In support of this argument, defendants cite to a number of New York cases [4] which establish the general rule that one acting solely as officer or agent for a corporation does not have standing, as an individual, to sue for fraud.

Plaintiff, arguing that he does have standing to sue in his individual capacity, asserts that defendants have applied the incorrect legal standard and that this Court should look to Restatement (Second) of Torts § 531, which provides that:

[o]ne who makes a fraudulent misrepresentation is subject to liability to the persons or class of persons whom he intends or has

---

**3.** As indicated in n. 1, *supra,* defendants have also moved pursuant to Rule 12(b)(6). However Rule 12(b) provides that, "[i]f, on a motion asserting the defense numbered (6) ..., matters outside the pleading are presented to and not excluded by the court, the motion shall be treated as one for summary judgment and disposed of as provided in Rule 56...." Inasmuch as defendants have submitted a statement and accompanying exhibits, pursuant to Local Civil Rule 3(g), U.S.D.C., S.D.N.Y., and this Court has not excluded these submissions, the Court will treat the instant motion as one for summary judgment.

**4.** Because this is a diversity action in federal court in New York, the Court must apply New York choice of law rules when deciding which substantive law is applicable to the instant action. *Klaxon Co. v. Stentor Elec. Mfg. Co.,* 313 U.S. 487, 496, 61 S.Ct. 1020, 1021, 85 L.Ed. 1477 (1941); *Griffin v. McCoach,* 313 U.S. 498, 503, 61 S.Ct. 1023, 1025, 85 L.Ed. 1481 (1941). The parties agree, and the Court concurs, that, under New York choice of law rules, this Court should apply New York substantive law. *See* Letter from Daniel A. Pollack to the Honorable Robert J. Ward (May 17, 1993); Letter from Henry P. Wasserstein to the Honorable Robert J. Ward (May 17, 1993).

reason to expect to act ... in reliance upon the misrepresentation, for pecuniary loss suffered by them through their justifiable reliance in the type of transaction in which he intends or has reason to expect their conduct to be influenced.

Powers contends that, because defendants had "reason to expect" that he would subsequently act in his individual capacity, § 531 establishes the requisite standing to sue. Defendants respond that the New York courts have never adopted the "reason to expect" standard.

■ The "reason to expect" standard included in § 531 has not always been an element of fraud law. At one time, actions for fraud under the common law required proof that the defendant intended to cause the plaintiff to rely on the misrepresentation. *See Globe Communications Corp. v. R.C.S. Rizzoli Periodici, S.p.A.*, 729 F.Supp. 973, 977 (S.D.N.Y.1990) (citing Harper, James & Gray, *The Law of Torts* § 7.2 (1986)). Indeed, Judge Cardozo's landmark opinion in *Ultramares Corp. v. Touche*, 255 N.Y. 170, 174 N.E. 441 (1931), which held that privity was not a necessary element of a fraud claim did not adopt the reason to expect test. However, as the terms of the Restatement (Second) of Torts § 531 make clear, the grounds for liability for fraud have expanded. Under § 531, a defendant who has reason to expect an entity to rely on a fraudulent misrepresentation is now liable to that person, even if the defendant did not intend for the person to rely.

■ Contrary to defendants' assertions, New York courts and federal courts applying New York law have adopted the reason to expect standard. "Reliance upon fraudulent representations by persons who are not the direct addressees thereof but who may be intended or expected to learn of and act upon such representations will found an action in fraud and deceit." *Wechsler v. Hoffman–La Roche, Inc.*, 198 Misc. 540, 99 N.Y.S.2d 588, 590 (Sup.Ct.1950), *aff'd as modified*, 279 A.D. 654, 108 N.Y.S.2d 990 (1951); *see also RMS International Shipping GmbH v. Stemcor USA, Inc.*, No. 90 Civ. 4918, 1991 WL 136035, at *2 (S.D.N.Y. July 18, 1991) ("[t]here is ... no requirement that the

plaintiff plead that the defendant intended specifically to defraud it"); *Berkowitz v. Baron*, 428 F.Supp. 1190, 1196 (S.D.N.Y.1977) ("in order for [defendant] to be liable to these plaintiffs, they must be within the class of persons that [defendant] should reasonably have expected to rely on the [discredited financial] statements"); *American Elec. Power Co. v. Westinghouse Elec. Corp.*, 418 F.Supp. 435, 450 (S.D.N.Y.1976) (a third-party beneficiary to a contract "may recover for defendant's alleged fraudulent misrepresentation upon a showing that such plaintiff was within the class of persons whom the defendant should reasonably have expected would rely on the statements") (citing Restatement (Second) of Torts § 531 (Tent. Draft No. 10 (1964))).

Defendants do not dispute that, under New York law, the intent prong of § 531 creates liability for a fraudulent misrepresentation. For example, the Second Circuit has held, applying New York law, that "[a] third party can recover damages for a fraudulent misrepresentation if he can establish that he relied upon it to his detriment, and that the defendants *intended* the misrepresentation to be conveyed to him." *Peerless Mills, Inc. v. American Tel. & Tel. Co. v. Hertz, Warner & Co.*, 527 F.2d 445, 450 (2d Cir.1975) (emphasis added) (citing Restatement (Second) of Torts § 531 (Tent. Draft No. 10 (1964))); *see Rosen v. Spanierman*, 894 F.2d 28, 33 (2d Cir.1990) (quoting *Peerless Mills*); *Mergentime/White v. Metcalf & Eddy of New York, Inc.*, No. 89 Civ. 7188, 1993 WL 72902, at *6 (S.D.N.Y. March 11, 1993) (quoting *Peerless Mills*); *see also Ultramares Corp. v. Touche*, 255 N.Y. at 187, 174 N.E. 441 ("[a] representation, even though knowingly false, does not constitute ground for an action of deceit unless made with the intent to be communicated to the persons ... who act upon it to their prejudice").

Moreover, the "intent" standard of § 531 has been given an expansive reading in the context of a fraudulent misrepresentation claim:

A result is intended if the actor either acts with the desire to cause it or acts believing that there is a substantial certainty that the result will follow from his conduct.

*Thus one who believes that another is substantially certain to act in a particular manner as a result of a misrepresentation intends that result, although he does not act for the purpose of causing it and does not desire to do so.*

Restatement (Second) of Torts § 531 cmt. c (1988) (emphasis added); *see Diduck v. Kaszycki & Sons Contractors, Inc.,* 974 F.2d 270, 278 (2d Cir.1992) (in the context of a common law fraud claim, "[a]n actor intends a result where there is substantial certainty that the result will follow from his actions") (citing Restatement (Second) of Torts § 531 cmt. c).

In their reply brief, defendants, citing to Illustration 8 of the Restatement (Second) of Torts § 531, argue that the authors of that section stated that they "expresse[d] no opinion" about liability in a hypothetical fact pattern which defendants assert is similar to the one presented in the instant matter. The Court disagrees. Illustration 8 provides that:

A, seeking to sell sheep to B, fraudulently tells C, who is B's agent negotiating the purchase, that the sheep are physically sound, although they are in fact diseased. *A does not intend that C shall buy the sheep and has no reason to know that he has any interest in them.* C buys the sheep for B, and then, in reliance upon A's statement, himself buys the sheep from B and as a result suffers pecuniary loss. The Institute expresses no opinion as to whether A is subject to liability to C.

(emphasis added) This hypothetical is distinguishable from the instant case insofar as plaintiff here alleges that defendants had reason to know and, in fact, actually did know of his personal interest in the representations made during the Spartech/Favorite negotiations.

■ In light of the foregoing, the Court finds that, under New York fraudulent misrepresentation law, the question is not, as defendants assert, whether Powers was acting as an individual or as an officer/agent of Spartech when negotiating the Favorite acquisition. Even if Powers was acting solely as an officer/agent and not in his individual capacity during the negotiations, defendants can still be held liable for fraudulent misrepresentations if they either (a) had reason to expect or (b) were substantially certain that Powers, in his individual capacity, would subsequently act in reliance on such misrepresentations.

■ Thus, the Court is presented with disputed issues of material fact: (a) did defendants have reason to expect that Powers would purchase Spartech securities in reliance on defendants' alleged misrepresentations or, in the alternative, (b) did defendants believe that Powers was substantially certain to purchase Spartech securities in reliance on defendants' alleged misrepresentations?

Plaintiff asserts that, on the basis of what he told defendants and provided in the form of written information during the 1986 and 1987 negotiations, they knew he would rely on their misrepresentations in purchasing Spartech securities. Moreover, Powers claims that defendants "specifically urged me to [purchase Spartech securities], stating that the Favorite acquisition would 'make your stock,' *i.e.,* impact Spartech and me positively." Powers Aff. ¶ 8. Defendants disagree with Powers' characterization of the substance of the communications between the parties and the inferences to be drawn from them. The substance of the communications between the parties, the inferences to be drawn from them and, ultimately, whether defendants either had reason to expect or actually believed that Powers was substantially certain to purchase Spartech securities as a result of the alleged fraudulent misrepresentations are all issues which, under Rule 56, are left for the trier of fact.

### C. Damages

Powers' damages claims fall into two categories: (1) claims relating to his purchase of Spartech securities and (2) claims relating to his employment by Spartech.

#### 1. *Investor–Related Damages Suffered by Powers*

Powers claims that, following the November 1987 purchase of Favorite by Spartech, he purchased Spartech securities in reliance upon defendants' misrepresentations. In

short, plaintiff alleges that defendants' fraudulent scheme caused Spartech to purchase Favorite at an artificially inflated price which, in turn caused Spartech to be artificially overvalued by the market. On this basis, Powers claims that he overpaid for the Spartech stock and should recover the difference between the price he paid for the Spartech stock and the actual worth of the stock at the time of purchase. Defendants argue that any injury suffered by Powers was (a) incidental to the damages allegedly suffered by Spartech and (b) too remote to give rise to a personal fraud action.

■ The parties agree that, under New York law, an existing corporate shareholder does not have standing to bring an individual fraud action for any damages claimed by the shareholder which arise solely from the drop in value of the corporation's stock as a result of a defendant's fraudulent misrepresentation. *See Vincel v. White Motor Corp.*, 521 F.2d 1113, 1118 (2d Cir.1975); *Bank Leumi Trust Co. of N.Y. v. D'Evori Int'l, Inc.*, 163 A.D.2d 26, 558 N.Y.S.2d 909, 916–17 (1990) ("It is well settled that a shareholder, even though he loses the value of his investment, does not have an individual cause of action for a wrong committed against a corporation") (citing *Abrams v. Donati*, 66 N.Y.2d 951, 498 N.Y.S.2d 782, 489 N.E.2d 751 (1985)); *Fifty States Management Corp. v. Niagara Permanent Sav. & Loan Ass'n*, 58 A.D.2d 177, 396 N.Y.S.2d 925, 927 (1977) (Cardamone, J.P.).

■ However "[u]nder New York law, a shareholder may bring an individual suit if the defendant has violated an independent duty to the shareholder, whether or not the corporation may also bring action." *Ceribelli v. Elghanayan*, 990 F.2d 62, 63 (2d Cir.1990)

(citing *Abrams* and *Fifty States Management Corp.*); *see also Vincel v. White Motor Corp.*, 521 F.2d at 1118 ("[t]here are ... exceptions to [the rule barring shareholder suits] that stem from the nature of the wrong alleged or a special relationship between the suing shareholder and the defendant creating a duty, contractual or otherwise, other than that owed to the corporation"); *Saxe, Bacon & Bolan, P.C. v. Martindale–Hubbell, Inc.*, 521 F.Supp. 1046, 1048–49 (S.D.N.Y.1981), *aff'd*, 710 F.2d 87 (2d Cir.1983); *New Castle Siding Co. v. Wolfson*, 97 A.D.2d 501, 468 N.Y.S.2d 20, 21 (1983), *aff'd*, 63 N.Y.2d 782, 481 N.Y.S.2d 70, 470 N.E.2d 868 (1984); *Fifty States Management Corp. v. Niagara Permanent Sav. & Loan Ass'n*, 396 N.Y.S.2d at 927 ("[w]here the injury to the stockholder results from a violation of a duty owing to the stockholder from the wrongdoer, having its origin in circumstances independent of and extrinsic to the corporate entity, the stockholder has a personal right of action against the wrongdoer").

Furthermore, a stockholder has standing to sue for direct injury suffered as a result of fraud. *See* 12B *Fletcher Cyclopedia Corporations* § 5911 (Perm. Ed.1993) ("If the injury is one to the plaintiff as a shareholder as an individual, and not to the corporation, as where the action is based on ... a fraud affecting the shareholder directly, it is an individual action.")

The parties' submissions present this Court with disputed issues of material fact concerning whether defendants' allegedly fraudulent misrepresentations resulted in violation of a duty to Powers, independent of any duty to Spartech, in connection with the artificially inflated price Powers paid to acquire Spartech securities subsequent to the alleged fraud.[5] Furthermore, the question of

---

**5.** Plaintiff's assertion that his direct injury resulted from his purchase of Spartech stock at an artificially inflated price presents this Court with a hybrid claim which mixes (i) an assertion of fraud against Powers as an individual with (ii) a broader fraud-on-the-market theory.

On the one hand, plaintiff claims that he relied on fraudulent statements which were provided by defendants in the context of private negotiations for the purchase of Favorite by Spartech. As discussed *supra*, this theory asserts that Powers was defrauded, in an individual capacity, and

arises pursuant to Restatement (Second) of Torts § 531.

On the other hand, Powers argues that the direct damages he suffered were caused by the artificially inflated price he paid for the Spartech stock. Inasmuch as Spartech was publicly traded, any artificially high selling price was set by other investors who made the market for Spartech stock. Under plaintiff's theory of the case, these investors set Spartech's price at artificially high levels in reliance on publicly available information about Spartech and its acquisition of

remoteness requires a factual determination which must be made by the trier of fact. Accordingly, this portion of defendants' motion is denied.

### 2. *Employee–Related Damages Suffered by Powers*

■ As this Court has indicated in a previous decision, a corporate employee does not have standing to sue for employment-related damages resulting from fraud unless the fraud was directed at that employee in an individual capacity. *See USA Soccer Properties, Inc. v. Aegis Group PLC*, No. 91 Civ. 360, 1992 WL 196795, at *6–7 (S.D.N.Y. Aug. 4, 1992). Plaintiff argues that Spartech's acquisition of Favorite required his personal approval, while defendants assert that plaintiff's approval was only required in his corporate capacity, as a director of Spartech. If he was acting solely in a corporate capacity, he may not recover employment-related damages for fraud against Spartech. However, if he was acting in an individual capacity in granting his approval of the Favorite acquisition, he may recover employment-related damages. The Court is presented with a disputed issue of material fact concerning whether Powers was acting in an individual or corporate capacity when approving the acquisition of Favorite by Spartech. Accordingly, summary judgment is inappropriate.

### CONCLUSION

This is a case about role-playing. It involves questions concerning the role Powers was playing in the Spartech–Favorite negotiations (i.e. officer/agent of Spartech or future purchaser of Spartech securities) and the role defendants believed with "substantial certainty" or had reason to expect Powers was playing. These are issues of fact, not law, and should be decided by a fact-finder after the introduction of evidence and testimony. For this reason, defendants' motion is denied.

Favorite. Thus while plaintiff is not asserting personal reliance under a fraud-on-the-market theory, he does argue implicitly that defendants caused a fraud-on-the-market which raised the

The parties are directed to complete discovery by August 27, 1993 and to file a joint pre-trial order by September 27, 1993.

It is so ordered.

price of Spartech stock. *See generally Basic Inc. v. Levinson*, 485 U.S. 224, 241–49, 108 S.Ct. 978, 988–92, 99 L.Ed.2d 194 (1988) (discussing fraud-on-the-market theory).